## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JUSTIN GRAHAM**,

        Plaintiff,

      vs.                                 No. **CIV 07-258 MCA/DJS**

**SEAN KENNY, JOSHUA MCDONALD,**
**CASEY DUTRO**, and **NORMA ENDRES**,
in their individual capacities,

        Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Plaintiff's Motion for Partial Summary Judgment Against Defendants Kenny and McDonald* [Doc. 32] filed on July 18, 2008, and Defendants' *Response* [Doc. 35] to the Court's *Order to Show Cause* [Doc. 33] filed on August 14, 2008. Having reviewed the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants Plaintiff's motion and orders further briefing for the reasons set forth below.

## I.    BACKGROUND

On March 16, 2007, Plaintiff Justin Graham filed this civil action against four officers of the Albuquerque Police Department (APD) seeking damages under 42 U.S.C. § 1983 for alleged violations of his right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution. These allegations arise from an incident that began shortly after 2:00 a.m. on March 23, 2004, when the four

Defendants (Sean Kenny, Joshua McDonald, Casey Dutro, and Norma Endres) went to Plaintiff's residence in Albuquerque, New Mexico in response to a noise complaint. Plaintiff alleges that upon arriving at his residence, Defendants proceeded to use excessive force against him (Count I), unlawfully enter and search his residence (Count II), and unlawfully detain and arrest him (Count III). [Doc. 1.]

On September 17, 2007, Defendants filed an *Answer* in which they admitted going to Plaintiff's residence in response to a noise complaint but denied the allegations that they acted unlawfully during that incident. [Doc. 7.] Defendants' *Answer* raised the defense of qualified immunity, but Defendants did not seek a stay of discovery or otherwise pursue this defense through any timely pretrial motions.

The assigned Magistrate Judge held a scheduling conference pursuant to Fed. R. Civ. P. 16, which resulted in a *Scheduling Order* [Doc. 11] setting a discovery deadline of April 18, 2008, and a dispositive-motions deadline of June 13, 2008. Based on the above deadlines set forth in the *Scheduling Order* [Doc. 11], the Court entered a *Minute Order Scheduling Jury Selection/Trial* [Doc. 12], which set the pretrial conference on October 7, 2008, and the jury selection/trial on a trailing docket commencing on December 8, 2008.

On April 9, 2008, the assigned Magistrate Judge granted a *Joint Motion to Extend Discovery* [Doc. 15] until May 20, 2008, noting that Defendants had not yet served any initial disclosures pursuant to Fed. R. Civ. P. 26 and had not yet responded to Plaintiff's interrogatories and requests for production. On April 18, 2008, Plaintiff filed a *Motion to Compel Discovery or Deem Certain Facts Admitted* [Doc. 19] based on Defendants'

continued failure to respond to Plaintiff's discovery requests.  While that motion to compel was pending, the assigned Magistrate Judge granted a second *Motion to Extend Discovery* [Doc. 26] until June 20, 2008, and to extend the dispositive-motions deadline until July 11, 2008, again citing Defendants' continued failure to respond to Plaintiff's discovery requests.

On June 19, 2008, the assigned Magistrate Judge granted Plaintiff's *Motion to Compel Discovery* [Doc. 29] and awarded Plaintiff reasonable attorney fees and costs in filing that motion.  On July 2, 2008, the Court granted Defendants' *Unopposed Motion to Extend Deadline for Dispositive Motions* [Doc. 30] until July 18, 2008, which was based on a delay in scheduling the deposition of Defendant Casey Dutro until after the discovery deadline of June 20, 2008, had passed.

On July 18, 2008, Plaintiff filed a *Motion for Partial Summary Judgment Against Defendants Kenny and McDonald* [Doc. 32].  Defendants did not file a timely response to this motion.  Consequently, on August 14, 2008, the Court issued an *Order to Show Cause* [Doc. 33] directing Defendants to show cause by no later than August 22, 2008, why the facts alleged in Plaintiff's motion should not be deemed admitted pursuant to D.N.M. LR-Civ. 56.1.

On August 22, 2008, Defendants filed their *Response* [Doc. 34] to the *Order to Show Cause*, in which they stated that the Deputy City Attorney who is counsel of record in this case "inadvertently" failed to request an extension of time or a motion for leave to file an untimely response to Plaintiff's summary-judgment motion because she was busy trying two other cases: a two and one-half day trial beginning on July 28, 2008, see Gonzales v. Duran,

No. 01cv898 RLP/LFG, Doc. 222 (D.N.M. jury trial held from July 28 to July 30, 2008), and a three and one-half day trial beginning on August 4, 2008, see Canizales v. Armendariz, No. 07cv198 JB/RHS, Doc. 111 (D.N.M. jury trial held from August 4 to August 7,  2008). Instead of filing a motion requesting leave to file an untimely response to Plaintiff's summary-judgment motion, however, Defendants simply filed their untimely response to that motion on August 22, 2008, without leave of Court or the concurrence of opposing counsel. [Doc. 35.]

The statement of facts set forth in Defendants' untimely response to Plaintiffs' motion for partial summary judgment largely relies on the same excerpts from deposition testimony that were previously submitted with Plaintiff's motion.  The few additional pages of deposition testimony attached to Defendant's response provide further background information or facts which are not material to the issues raised in Plaintiff's motion.  [Kenny Dep. at 22-24, 30-33, 46-49; Dutro Dep. at 6-9.]

Viewed in the light most favorable to the Defendants, the facts stated in Plaintiff's motion, the evidence attached thereto, and the few additional pages of deposition testimony submitted with Defendant's response, can be summarized as follows.

Plaintiff was away from his residence for several hours on the night in question, during which time he did not drink any alcoholic beverages.  At about 2:00 a.m. that night, Plaintiff returned to his residence, which was then occupied by his roommate, Noel Bustillos; some friends, Kyle Prinkey, Ira Lujan, and Josh Goodluck; and Mr. Bustillos' younger brother and cousin, ages thirteen and fifteen.  Plaintiff heard the two juveniles playing video

games and yelling when he arrived.  Plaintiff told them to quiet down and closed the windows at the front of the residence.  Plaintiff then opened a bottle of beer for himself. There were some other beer bottles and a metal tray on the coffee table in the living room at that time.  [Graham Dep. at 10-13, 18-23.]

Meanwhile, Defendants Kenny, McDonald, Dutro, and Endres were dispatched to Plaintiff's residence in response to a complaint from a neighbor about a loud party going on. The evidence of record does not identify the source of the noise complaint or any further details that were conveyed to Defendants by their dispatcher.  Defendants parked their police vehicles several houses down from the residence, and Defendant McDonald heard noises associated with yelling, shouting, and laughing as they approached it.  [Kenny Dep. at 29; McDonald Dep. at 10-12.]  Defendant Kenny claims to have heard music.  [Kenny Dep. at 32.]

At some point before contacting the occupants, Defendant Kenny also claims to have smelled the odor of burning marijuana somewhere around the exterior of the residence, but he did not identify any visible plume of marijuana smoke or provide any details about where the odor was coming from.  [Kenny Dep. at 38-41.]  Plaintiff denies that anyone in his residence was smoking marijuana on the night in question. [Graham Dep. at 20-21.]  The *Criminal Complaint* subsequently filed in state court refers to an odor associated with marijuana, but that reference occurs in a narrative which indicates that the odor was detected *after* the Defendants entered the residence.  [Ex. 7 to Doc. 32.]  Defendant's untimely response to Plaintiff's motion contends that Defendant Kenny "smelled the odor of burnt

-5-

marijuana coming from the apartment" [Doc. 36, at 2], but the deposition testimony cited in Defendant's response does not support this contention.  [Kenny Dep. at 71.]

Defendants described Plaintiff's residence as being part of a one-story apartment complex with a courtyard area.  The living room of the residence has at least one window, which was covered with Venetian blinds except for a small gap at the bottom near the window sill.  The front door of the residence also opens into the living room.  There was a screen door on the outside of the front doorway, and the front door itself contained some small uncovered windows at about eye level.  [Graham Dep. at 24-25, 32-33; Kenny Dep. at 29, 60; McDonald Dep. at 12-13, 21.]

Defendants Dutro and Endres, who were APD recruits at the time, walked up to the front door of the residence to contact the occupants about the noise, while Defendant McDonald stood a few yards behind them.  Defendant Kenny stood off to the side and attempted to look through the window into the living room.  From that vantage point, Defendant Kenny saw several males inside the apartment, as well as the open beer bottles on the coffee table.  One of the occupants in Defendant Kenny's line of sight appeared to be less than 21 years of age; however, Defendant Kenny did not see that occupant holding any alcoholic beverages in his hand.  Defendant Kenny also did not report seeing any weapons, marijuana, or other controlled substances from his vantage point outside the front window of Plaintiff's residence.  [Kenny Dep. at 34-38; McDonald Dep. at 12-13; Dutro Dep. at 10-11.]

While Defendants were positioned in the manner described above, Defendant Dutro loudly knocked on the front door of Plaintiff's residence, thereby alerting Plaintiff to the Defendants' presence.  From his vantage point outside the front window, Defendant Kenny heard one of the occupants say "It's the cops."  He then saw one of the occupants (later identified as Mr. Prinkey) gather items from the coffee table onto a metal tray.  [Dutro Dep. at 10; McDonald Dep. at 13-14;  Kenny Dep. at 35; Graham Dep. at 23.]

Plaintiff heard the knock on the door and then heard someone say "the police are here."  He responded by coming to the front door of his residence.  He partially opened the front door and, while standing inside the residence, briefly spoke to the officers through the outer screen door, which was closed at the beginning of their conversation.  Defendant Dutro was the first to speak with Plaintiff.  From her vantage point just outside the front door, Defendant Dutro did not see anything suspicious inside the residence. She explained to Plaintiff that the officers were there in response to a noise complaint.  Plaintiff indicated that he understood and agreed to keep the noise down but did not give his consent to allow the officers to enter his residence.  [Graham Dep. at 24-27; Dutro Dep. at 10-12, 16-17; McDonald Dep. at 14; Endres Dep. at 34; Doc. 32, at 3; Doc. 36, at 3.]

Defendant Kenny then stepped forward, pulled the screen door open, and demanded to speak with another occupant of the residence (Mr. Prinkey), whom Defendant Kenny had just seen walking from the living room into a back room while carrying the metal tray that he observed earlier.  Looking through the partially open front door, Defendant McDonald

also may have caught a glimpse of Mr. Prinkey as he walked from the living room to a back room.  [Graham Dep. at 25-33; Kenny Dep. at 50-56; McDonald Dep. at 14-16.]

Plaintiff responded to Defendant Kenny's actions by answering "no" and attempting to close the front door so he could retreat into his residence.  Defendant Kenny prevented Plaintiff from closing the front door by putting his foot in the doorway; he then tried to pull Plaintiff out of the residence.  Plaintiff slipped out of Defendant Kenny's grasp and again tried to close the door.  Defendant McDonald then stepped up and, together with Defendant Kenny, began pushing against the front door in an attempt to force it open so the officers could enter the residence.  Plaintiff and one of the other occupants (later identified as Mr. Bustillos) pushed back in an attempt to keep the front door closed.  [Graham Dep. at 25-27; 33-36; Kenny Dep. at 56-59; McDonald Dep. at 16-18.]

None of the Defendants drew their firearms.  To further their effort to force their way through the front door, however, Defendants Kenny and McDonald tried unsuccessfully to "taze" Plaintiff by aiming a tazer through the partially open doorway.  Defendant Kenny told Plaintiff he was under arrest and then struck the front door's glass window with his hand, causing the glass to break and strike Plaintiff in the face.  Defendant McDonald also dispensed pepper spray into the living room through the partially open doorway and the now-broken window.  [Kenny Dep. at 58-61; McDonald Dep. at 18-22; Graham Dep. at 38-44.]

Bleeding from the broken glass in his face and beginning to feel the effects of the pepper spray, Plaintiff surrendered to the officers' show of force and stepped back to the living room couch, as did Mr. Bustillos.  Plaintiff then sat down on the couch and placed his

hands behind his back.  Defendants Kenny and McDonald proceeded to enter the living room through the front door, whereupon Plaintiff claims that Defendant Kenny sprayed him in the face with pepper spray as he sat on the living-room couch.  [Graham Dep. at 45-47; McDonald Dep. at 22-23.]  In his untimely response to Plaintiff's motion, Defendant Kenny denies that anyone dispensed pepper spray at Plaintiff while he was seated on the couch.  [Kenny Dep. at 68.]

At the direction of Defendants Kenny or McDonald, Defendants Dutro and Endres went around to the back of Plaintiff's residence and entered through a back door.  Once inside the residence, Defendants handcuffed Plaintiff and rounded up all of the other occupants.  After securing the occupants, Defendants took them outside for interrogation and searched Plaintiff's residence.  With the assistance of Mr. Prinkey, whom they had detained and advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), Defendants' search resulted in the discovery of a small amount of marijuana (described as about a "dime bag") in a package of cigarettes hidden in a bedroom closet, and a small amount of marijuana seeds and stems on the metal tray that Mr. Prinkey had carried out of the living room when the officers first arrived.  No weapons or other contraband were discovered.  [Kenny Dep. at 59-60, 69-70; McDonald Dep. at 23-25, 49; Graham Dep. at 47-52, 55-57; Endres Dep. at 35.]

Plaintiff and Mr. Bustillos were taken into custody and booked.  Plaintiff was subsequently indicted in state court on a charge of contributing to the delinquency of a minor, but the charge was dismissed based on the state court's conclusion that all of the evidence had to be suppressed under the exclusionary rule because the Defendant's entry into

Plaintiff's residence was unlawful.  [Graham Dep. at 52-57; Dutro Dep. at 12-15; Ex. 7, 8 to Doc. 32.]

## II.   **ANALYSIS**

### A.   **Standard of Review**

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact, and that the moving party is entitled to judgment as a matter of law.  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  A fact is "material" if it might affect the outcome of the case.  See id. at 248.

When the movant is also the party bearing the burden of persuasion on the claim for which he or she is seeking summary judgment, the movant must show that the record as a whole satisfies each essential element of his or her case and negates any affirmative defenses in such a way that no rational trier of fact could find for the non-moving party.  See 19 Solid Waste Dep't Mechanics v. City of Albuquerque, 156 F.3d 1068, 1071 (10th Cir.  1998); Newell v. Oxford Mgmt., Inc., 912 F.2d 793, 795 (5th Cir. 1990); United Missouri Bank of Kansas City, N.A. v. Gagel, 815 F. Supp. 387, 391 (D. Kan. 1993).  But when the movant does not bear the burden of proof as to the claim or defense at issue in the motion, then judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof

at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S. at 324. "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'" Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir.1991)).  Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion.  Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (applying this rule to inadmissible hearsay testimony in depositions).

The Court may, however, consider any undisputed material facts set forth in the motion papers which are deemed admitted by operation of D.N.M. LR-Civ.56.1.  See LaMure v. Mut. Life Ins. Co. of N.Y., 106 F.3d 413, 1997 WL 10961, at *1 (10th Cir. 1997) (unpublished disposition); Smith v. E.N.M. Med. Ctr., 72 F.3d 138, 1995 WL 749712, at *4 (10th Cir. 1995) (unpublished disposition); Waldridge v. American Hoechst Corp., 24 F.3d 918, 920-24 (7th Cir.1994) (approving use of local rule similar to D.N.M. LR-Civ. 56.1(b)). "Admissions in a party's pleadings or in a pretrial order are similarly binding." Underberg v. United States, 362 F. Supp. 2d 1278, 1283 (D.N.M. 2005).  "However, a party generally

may not introduce statements from its own answers to interrogatories or requests for admission as evidence because such answers typically constitute hearsay when used in this manner." Id. (citations omitted). The Court also does not consider evidence submitted for the first time in a reply brief. See Beaird v. Seagate Technology, Inc., 145 F.3d 1159, 1164-65 (10th Cir. 1998).

Apart from these procedural and evidentiary limitations, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### B.    Defendants' Failure to File a Timely Response

When, as here, the non-movant does not file a timely response to a dispositive pretrial motion, the Court may not rely on this fact alone, without further analysis, as the grounds for granting summary judgment in the movant's favor. See Reed v. Bennett, 312 F.3d 1190, 1194-95 (10th Cir. 2002). Accordingly, I do not construe the Defendants' failure to respond in a timely manner as an indication of their consent to grant the motion under D.N.M. LR-Civ. P. 7.1(b).

Instead, the Court must perform the sanctions analysis outlined in Meade v. Grubbs, 841 F.2d 1512 (10th Cir. 1988), or "make the determination that judgment for the moving party is 'appropriate' under Rule 56." Reed, 312 F.3d at 1195. Although I determine that

partial summary judgment on the issues raised in Plaintiff's motion is appropriate even if Defendants' untimely response is considered under Rule 56, a sanctions analysis is also appropriate here because Defendants' failure to file a timely response to Plaintiff's motion for partial summary judgment forms part of a pattern of non-responsive behavior and disregard for the rules and orders of the Court in this litigation.

I note, for example, the Defendants' prior delays in making their initial disclosures pursuant to Fed. R. Civ. P. 26 and responding to Plaintiff's interrogatories and requests for production, as stated in the *Order to Show Cause* [Doc. 33]. The Court also notes that the assigned Magistrate Judge previously attempted to correct this behavior by awarding attorney fees and costs on Plaintiff's *Motion to Compel Discovery* [Doc. 29]. This lesser sanction, however, has not deterred Defendants' dilatory conduct, because they subsequently failed to file a timely response to Plaintiff's *Motion for Partial Summary Judgment Against Defendants Kenny and McDonald* [Doc. 32].

When Defendants finally did file a response to Plaintiff's motion on August 22, 2008, they failed to seek leave of Court or note the concurrence of Plaintiff's counsel. Nevertheless, Defendants' response to the Court's *Order to Show Cause* claims that their failure to do so was "inadvertent" and resulted from the fact that the Deputy City Attorney who is counsel of record in this case was involved in two other trials during July and August 2008. Court records in those cases indicate that they also suffered from delays and extensions of time, and in the present case the filing and briefing on Plaintiff's motion could have occurred much earlier (*i.e.*, before the two trials attended by Defendants' counsel) if

-13-

Defendants had completed their discovery obligations in a more timely manner, without requesting numerous extensions and making it necessary for Plaintiff to file a *Motion to Compel*.

Absent an appropriate sanction, the effect of Defendants' pattern of dilatory conduct is to deter Plaintiff and the Court from adequately preparing this case for trial and completing the trial in a timely manner. Adequate trial preparation and timely trial proceedings are especially important in this case, given the City of Albuquerque's "no settlement" policy which effectively leaves Plaintiff with no other means of resolving his claims except to move for summary judgment on liability and try the remaining claims for damages before a jury.

To the extent that the City's "no settlement" policy entails more frequent trials and a busier schedule for the City's attorneys, it is not unreasonable to expect the City to devote the resources necessary to perform this additional work in a competent and timely manner. Claims of being "too busy" because of other trials do not provide good cause for the Defendants' delays in litigating this case, when the reason for the extra business occasioned by other trials is the City's own conscious decision not to engage in pretrial settlement negotiations in any civil-rights cases against APD or its officers. Refusing to make a good-faith effort to settle cases, while at the same time declining to devote the resources necessary to perform the additional trial work generated by this refusal, can be seen as an effort to avoid the burdens of litigation altogether so as to deprive the Plaintiff of his day in court. Such a "no litigation" policy reflects a high degree of culpability, is unfairly prejudicial, and interferes with the judicial process.

-14-

Nevertheless, the Court will not impose the ultimate sanction of entering a default judgment against one or more Defendants at this juncture. Instead, I find that the interests of justice are best served by the lesser sanction of deeming the material facts asserted in Plaintiff's motion admitted by operation of D.N.M. LR-Civ. 56.1 to the extent that they are properly supported by the evidence of record at the time that motion was filed. This sanction is consistent with D.N.M. LR-Civ. 56.1 and the Tenth Circuit's holding in Reed, 312 F.3d at 1195, which specifically instructs that the "court should accept as true all material facts asserted and properly supported in the summary judgment motion" in this type of situation.

Contrary to what is stated in Defendants' response to the *Order to Show Cause*, imposing this sanction does not mean that Defendants Kenny and McDonald are automatically liable on any of the claims asserted in Plaintiff's *Complaint*. Defendants retain the ability to present legal arguments in support of their defense of qualified immunity, in an attempt to show that the material facts asserted in Plaintiff's motion do not amount to a violation of a constitutional or statutory right that was clearly established at the time of their conduct. See Medina v. Cram, 252 F.3d 1124, 1128-29 (10th Cir. 2001); Gross v. Pirtle, 245 F.3d 1151, 1155-56 (10th Cir. 2001). Because Plaintiff was quite candid in stating the facts and submitting the relevant deposition testimony in support of his motion, the result of the Court's legal analysis regarding that motion would not change even if I also considered the additional deposition excerpts attached to Defendants' response.

To avoid further delays in this case, the Court will order additional briefing to clarify the status of each of Plaintiff's claims and how they will be tried. The Court also retains the

authority to impose additional and more severe sanctions should there be a continuation of Defendants' pattern of dilatory behavior and lack of compliance with Court rules and scheduling orders.

> **C.**   **Plaintiff's Unlawful Entry and Search Claim**
> **Against Defendants Kenny and McDonald**

Plaintiff's claims for damages in this case are brought under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Because this statute is not an independent source of substantive rights, but rather a mechanism for enforcing federal rights conferred elsewhere, the analysis of the claims asserted in Plaintiff's motion for partial summary judgment necessarily begins by identifying the specific federal rights that allegedly were violated and the persons who allegedly committed these violations.  See Graham v. Connor, 490 U.S. 386, 393-94 (1989); Dixon v. City of Lawton, 898 F.2d 1443, 1448 (10th Cir. 1990).  The constitutional right at issue in Plaintiff's motion is the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  More specifically, Plaintiff seeks partial summary judgment on the question whether Defendants

Kenny and McDonald violated his Fourth Amendment rights by entering and searching his residence without a warrant.

Persons sued in their individual capacity under 42 U.S.C. § 1983 generally are entitled to qualified immunity unless it is shown that their actions violated a specific statutory or constitutional right and that the rights which they allegedly violated were clearly established at the time of the conduct at issue. See Oliver v. Woods, 209 F.3d 1179, 1185 (10th Cir. 2000). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). But "officials can still be on notice that their conduct violates established law even in novel factual circumstances," particularly when an official's conduct amounts to "obvious cruelty." Hope v. Pelzer, 536 U.S. 730, 741, 745 (2002); see, e.g., Holland v. Harrington, 268 F.3d 1179, 1197 (10th Cir. 2001) (denying qualified immunity to SWAT deputies "for training a firearm directly on a four-year-old child"). The "salient question" is whether the state of the law at the time of the incident gave the defendants "fair warning" that their conduct was unconstitutional. Hope, 536 U.S. at 741; accord Roska v. Peterson, 328 F.3d 1230, 1247-48 (10th Cir. 2003).

When, as here, a defense of qualified immunity has been raised in the context of the Fourth Amendment, the Court applies two distinct standards of reasonableness. First, in determining whether a defendant's actions violated a specific right, the Court must decide whether the defendant conducted a search or seizure that was "unreasonable" under the

Fourth Amendment.  Second, if such a violation is found, then in determining whether the constitutional right at issue was clearly established at the time of the search or seizure, the Court must answer the additional question of whether the contours of the right were "sufficiently clear that a reasonable official would understand that what he [did] violate[d] that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); accord Saucier v. Katz, 533 U.S. 194, 203-04 (2001).

The subjective intentions or state of mind of the Plaintiff or the Defendants are not relevant to determining whether the entry and search of a residence is objectively reasonable under the Fourth Amendment.  See Arkansas v. Sullivan, 532 U.S. 769, 771-72 (2001); United States v. Sanchez, 89 F.3d 715, 718 (10th Cir. 1996).  Rather, "the reasonableness of an officer's conduct must be assessed 'from the perspective of a reasonable officer on the scene,' recognizing the fact that the officer may be 'forced to make split-second judgments' under stressful and dangerous conditions."  Medina, 252 F.3d at 1131 (quoting Graham, 490 U.S. at 396-97).

This assessment must be "based upon the information the officers had when the conduct occurred."  Saucier, 533 U.S. at 207.  Thus, while Plaintiff cannot rely on information that was unknown to the Defendants as a basis for establishing a Fourth Amendment violation, by the same token the Defendants cannot rely on evidence first discovered *after* a search occurred to show the reasonableness of the search which preceded that discovery.  See United States v. Reeves, 524 F.3d 1161, 1170 (10th Cir. 2008).

In their response to Plaintiff's motion and in their deposition testimony, Defendants Kenny and McDonald contend that their entry and search of Plaintiff's residence was justified by exigent circumstances.  In particular, they point to their observation that one of the occupants, Mr. Prinkey, was seen walking from the living room to a back room with a metal tray after another occupant became aware of the Defendants' presence outside the residence and announced "It's the cops."  Defendant Kenny also points to his observation that a person who appeared to be under the age of 21 was seen in the living room while a number of open beer bottles were on the coffee table.

In their deposition testimony, Defendants Kenny and McDonald stated a concern that Mr. Prinkey might have been walking to a back room of the residence in order to destroy evidence or to arm himself.  They also expressed a concern about the potential for one or more minors in the residence to be exposed to alcoholic beverages or marijuana.  Thus, Defendants Kenny and McDonald contend that their entry and search of the residence was prompted by legitimate concerns about officer safety, preventing the destruction of evidence, and ensuring the safety of any minors that might have been present in Plaintiffs' residence at the time.

In order to assess the validity of these contentions, the Court applies the well-established rule that "'searches and seizures inside a home without a warrant are presumptively unreasonable'" under the Fourth Amendment.  United States v. Cuaron, 700 F. 2d 582, 586 (10th Cir. 1983) (quoting Payton v. New York, 445 U.S. 573, 586 (1980)). The jurisprudence of the Tenth Circuit "has long recognized that a person's privacy interest

is at its highest in a person's home." <u>Roska</u>, 328 F.3d at 1248.  In this case, it is undisputed that the residence which Defendants entered and searched was Plaintiff's home and that Defendants did not have a warrant when they did so.

Our Supreme Court has recognized an exception to the warrant requirement when the police have probable cause to believe that a residence contains evidence of criminal activity and "a plausible claim of specially pressing or urgent law enforcement need, *i.e.*, 'exigent circumstances.'" <u>Illinois v. McArthur</u>, 531 U.S. 326, 331 (2001); <u>accord</u> <u>Kirk v. Louisiana</u>, 536 U.S. 635, 637-38 (2002).  "The notion that emergency circumstances may in appropriate cases make a warrantless search constitutional if probable cause exists is a clearly established exception to the warrant requirement."  <u>United States v. Aquino</u>, 836 F.2d 1268, 1270-71 (10th Cir. 1988); <u>accord</u> <u>Cuaron</u>, 700 F.2d at 586.  In addition to circumstances where the destruction of particular evidence is imminent, the Tenth Circuit has applied this exception to "'hot pursuit of a fleeing felon . . . or the need to prevent a suspect's escape, or the risk of danger to the police or to other persons inside or outside the dwelling.'"  <u>United States v. Wicks</u>, 995 F. 2d 964, 970 (10th Cir. 1993) (quoting <u>Minnesota v. Olson</u>, 495 U.S. 91, 100 (1990) (citations omitted)).

### 1.   <u>Exigencies Arising From the Need to Preserve Evidence</u>

I first examine whether the need to pursue a suspect (*e.g.,* the occupant who retreated from the living room to a back room) for the purpose of preserving evidence (*e.g.*, the contents of the metal tray that the occupant took with him to the back room) amounted to exigent circumstances during the incident presented here.  Before this incident occurred, the

Tenth Circuit articulated four clearly-established requirements for showing the exigent circumstances necessary to make a warrantless entry for the purpose of preventing the imminent destruction of evidence:  such entry "must be '(1) pursuant to clear evidence of probable cause, (2) available only for serious crimes and in circumstances where the destruction of evidence is likely, (3) limited in scope to the minimum intrusion necessary, and (4) supported by clearly defined indicators of exigency that are not subject to police manipulation or abuse.'"  United States v. Carter, 360 F.3d 1235, 1241 (10th Cir. 2004) (quoting Aquino, 836 F.2d at 1272).

Accordingly, it is clearly established that when a claim of exigent circumstances is premised on a suspicion of criminal activity, "'an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest [or search] is being made.'"  Brigham City v. Stuart, 547 U.S. 398,  405 (2006) (quoting Welsh v. Wisconsin, 466 U.S. 740, 753 (1984)).  Although the requirements of state law typically are not relevant to determining whether a violation of the Fourth Amendment has occurred, see Virginia v. Moore, 128 S. Ct. 1598, 1607 (2008), such requirements may be relevant to determining the *gravity* of an offense that arises under state law, see Marshall v. Columbia Lea Regional Hosp., 474 F.3d 733, 746 (10th Cir. 2007).

Thus, "in the context of a search by state officials for evidence of a state offense," exigent circumstances are "measured in part by the relative importance given by state law to the evidence sought through the warrantless search."  Marshall v. Columbia Lea Regional Hosp., 345 F.3d 1157, 1175 (10th Cir. 2003) (citing Welsh, 466 U.S. at 751, 754).  "The

-21-

rationale for the exigent circumstances doctrine is to avoid the loss of evidence due to the time required for obtaining a warrant--not to enable police to obtain evidence in cases of alleged violations too trivial to support a warrant." Id. at 1174.  It follows that "[w]hen a crime is not important enough to justify a warranted search, it is not important enough to justify an 'exigent circumstances' search." Id. at 1173.

The Tenth Circuit has noted that "possession of a small quantity of marijuana" is a crime that does not reach the level of seriousness or gravity that is required for law enforcement officers to avail themselves of the "exigent circumstances" exception. Carter, 360 F.3d at 1242.  Similarly, the Tenth Circuit has recognized that New Mexico law generally does not authorize the issuance of a warrant to search for evidence of a misdemeanor offense, such as driving while intoxicated, possessing less than eight ounces of marijuana, or violating a municipal ordinance. See Marshall, 345 F.3d at 1173 (citing N.M. Stat. Ann. §§ 66-8-111(A) and 30-31-23(B)(2) (Michie 1978)); Howard v. Dickerson, 34 F.3d 978, 982 (10th Cir. 1994) (citing municipal ordinances).  Accordingly, if the behavior which Defendants perceived in Plaintiff's residence prior to their entry only established probable cause to believe that such a minor offense had been committed, the need to pursue a suspect or preserve evidence of such a minor offense does not provide the type of exigent circumstances necessary to justify a warrantless entry and search.

The evidence of record in this case does not support a reasonable inference that, before entering and searching Plaintiff's residence, the Defendants established probable cause to believe that the occupants of the residence were involved in any offenses more

serious than the noise violation which prompted the APD dispatcher to call Defendants to the scene.  While the Tenth Circuit "'has long recognized that marijuana has a distinct smell and that the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage,'" United States v. Zabalza, 346 F.3d 1255, 1259 (10th Cir. 2003) (quoting United States v. Morin, 949 F.2d 297, 300 (10th Cir. 1991)), in this case Defendant Kenny's deposition testimony only mentions smelling the odor of burning marijuana at some unspecified location around the exterior of the residence, which was part of a multi-unit apartment complex.  This testimony is too vague and conclusory to establish a nexus with any illegal activity occurring inside Plaintiff's residence.  I note, for example, that Defendant Kenny could not identify where the odor was coming from, did not refer to a visible plume of marijuana smoke, and did not observe anyone smoking marijuana or handling drug paraphernalia (on the metal tray or elsewhere) when he looked through the window.  Without more specific evidence on this point, Defendants cannot establish the required nexus between the odor and the interior of Plaintiff's residence, much less draw a reasonable inference that the odor was associated with possession of more than eight ounces of marijuana or resulted from smoking marijuana by or in the presence of a minor.

Similarly, Defendant Kenny's observation that someone who appeared to be less than 21 years old was in the same room as some open beer bottles does not support a reasonable inference that the occupants were creating exigent circumstances by violating the New Mexico statute which prohibits contributing to the delinquency of a minor (CDM).  New Mexico's CDM statute prohibits an adult from *causing* or *encouraging* a minor to engage in

an injurious activity such as drinking alcoholic beverages, see N.M. Stat. Ann. § 30-6-3 (Michie 1990), but the statute does not make it a crime for a minor to be in the presence of an adult who is drinking an alcoholic beverage, see State v. Romero, 2000-NMCA-029, ¶ 20, 128 N.M. 806, 999 P.2d 1038, or for an adult to be in the presence of a minor while that minor is engaged in a delinquent act, see State v. Grove, 82 N.M. 679, 681, 486 P.2d 615, 617 (Ct. App 1971).  If the mere presence of a teenage minor in proximity to an alcoholic beverage were all that is required to establish probable cause and exigent circumstances for a CDM offense, then practically all adults present at professional sporting events could be arrested for violating this statute, and law enforcement officers could enter and search anyone's home whenever they observe both a teenage minor and a beer bottle in the same room.

There has been clearly established law in the Tenth Circuit since at least 2003 which indicates that such generalized concerns about *potential* risks to the health or welfare of a child do not constitute exigent circumstances or otherwise excuse law enforcement officers from obtaining a warrant, even when the child is substantially younger than the teenagers involved in this case.  See Roska, 328 F.3d at 1248-50 (collecting cases which hold that "police officers could not enter a house to investigate *potential* child abuse without a warrant") (emphasis added).  The mere fact that a child is involved does not create an "inherent exigency" or permit officer to "simply recite urgent needs without factual support. Otherwise, the exception swallows the rule."  Cortez v. McCauley, 478 F.3d 1108, 1124 (10th Cir. 2007) (en banc).

It follows that Defendants have not identified an offense which is sufficiently grave enough to qualify for the "exigent circumstances" exception and render a warrantless entry and search of the residence reasonable under the Fourth Amendment.  Defendants' concerns about pursuing a suspect (*e.g.*, the occupant who retreated to a back room) or preserving evidence (*e.g.*, the contents of the metal tray that occupant was carrying) do not provide exigent circumstances in the present case.

### 2.    Safety-Related Exigencies

I next turn to the contention of Defendants Kenny and McDonald that their entry and search of Plaintiff's residence was justified by officer-safety concerns arising from Mr. Prinkey's retreat from the living room to a back room, or by concerns about the safety of any minors whom Defendants briefly observed before they attempted to enter the residence.  In examining this contention, the Court recognizes that police encounters with potential suspects almost always carry some inherent risk of danger, and the Court does not wish to second-guess officers' efforts to anticipate risks and protect themselves or others when a potential suspect leaves the scene or goes out of view.  The Court also recognizes the dangers of underage drinking and has not hesitated to direct a verdict in favor of law-enforcement officers who enter a residence in response to observing a dangerously intoxicated child.  See, e.g., Bochove v. Village of Corrales, 183 Fed. Appx. 715, 717-18 (10th Cir. 2006) (unpublished disposition affirming a directed verdict on wrongful search and detention claims arising from law enforcement officers' response to a party where a boy inexplicably became unconscious).

As a matter of law, however, the Court cannot equate a *potential* danger that inheres in every case with a finding of exigent circumstances, because to do so would cause the exception to swallow the rule and permit warrantless searches as an incident to every encounter between a law enforcement officer and a potential suspect.  Instead, the Court looks to a narrower definition of the type of safety-related exigency that is required to qualify for an exception to the Fourth Amendment's warrant requirement in the context presented here.

Both the Supreme Court and the Tenth Circuit recently reiterated the narrow contours of this exception in Brigham City v. Stuart, 547 U.S. 398 (2006), and United States v. Najar, 451 F.3d 710 (10th Cir. 2006).  In their untimely response brief, Defendants repeatedly cite Stuart and Najar in support of their argument that the entry and search of Plaintiff's residence was justified by exigent circumstances.  At the same time, Defendants maintain that the law on this topic is not clearly established.  I conclude, however, that both Stuart and Najar are factually distinguishable from the present case, and that the most basic legal requirement for establishing a safety-related exigency was clearly established at the time of the incident in question.

In Stuart, 547 U.S. at 400-01, officers were dispatched to a residence in response to a report of a loud party, where they heard shouting, observed two juveniles drinking in the back yard, looked into the residence through a screen door and windows, and then saw a fight break out in which one occupant struck a blow to the face of another occupant, causing him to spit blood into a nearby sink; the fight continued and grew to involve several occupants

despite the officers' announcement of their presence at the screen door.   Under these circumstances, "it would serve no purpose to require [the officers] to stand dumbly at the door awaiting a response [or a warrant] while those within brawled on, oblivious to their presence."   Id. at 406.   Thus, the Supreme Court concluded that after having made the observations described above, the officers could lawfully "enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury."   Id. at 403.

The Tenth Circuit recently applied the Stuart criteria for exigent circumstances in Najar.   There police officers responded to a "911 disconnect," *i.e.*, a situation where a 911 dispatcher received a call and traced it to a particular telephone number and residence, but the caller hung up the phone or lost the connection before speaking with the dispatcher.   The Tenth Circuit emphasized the fact that both the 911 dispatcher and the officers he dispatched to the residence engaged in further efforts to confirm or dispel their suspicions about the need for emergency assistance before making the decision to enter the residence:   "To their credit, they did not simply batter down the door.   We applaud their restraint and circumspection." Najar, 451 F.3d at 719.

As evidence of such restraint and circumspection, the Najar opinion notes that the dispatcher first made several attempts to call back and reach the person who had initiated the 911 call.   "Each time his call was answered but quickly disconnected without a word."   Id. at 712.   The officers dispatched to the scene then went around the outside of the residence and spent about thirty minutes trying to gather more information and attract the attention of

an occupant whom they observed inside the residence.  That occupant finally relented and answered the door; the officers then entered the residence after a brief conversation in which the occupant denied calling 911 or having anyone else present in the residence.  Id.  On these facts, the Tenth Circuit held that exigent circumstances developed during the 911 disconnect and the ensuing investigation obviated the need for the officers to obtain a warrant before entering the residence.

In subsequent cases, the Tenth Circuit has continued to follow the Stuart/Najar requirements for establishing a safety-related exigency: "To demonstrate that officer or victim safety justifies a warrantless entry, the government must show, '(1) the officers had an objectively reasonable basis to believe that there was an immediate need to enter to protect the safety of themselves or others, and (2) the conduct of the entry was reasonable.'" Reeves, 524 F.3d at 1169 (quoting United States v. Walker, 474 F.3d 1249, 1253 (10th Cir.2007)).  These requirements are clearly established.

Although it is true that both Stuart and Najar were decided after the incident at issue in the present case, they do not add new or stricter requirements that were not clearly established in earlier Tenth Circuit precedent.  Such earlier precedent recognized the basic requirement that "the law enforcement officers . . . have reasonable grounds to believe that there is immediate need to protect their lives or others." United States v. Anderson, 981 F.2d 1560, 1567 (10th Cir. 1992).  Thus, at the time of the incident in question, this basic requirement was sufficiently clear that a reasonable official would understand that safety-related exigent circumstances could not be established without it.

Some earlier Tenth Circuit opinions may have referred to an additional requirement which depended on the officers' subjective motives for entering the residence.  See id.  This type of subjective-motive requirement was rejected in Stuart, 547 U.S. at 404, and consequently any additional requirements for establishing a safety-related exigency which did not survive Stuart do not provide a basis for denying qualified immunity in this case.  See Cortez, 478 F.3d at 1124 n.21.  As in Cortez, however, the Court still may deny qualified immunity based on an officer's failure to satisfy the other minimum requirements for safety-related exigent circumstances which were clearly established in Tenth Circuit precedent at the time of the incident in question, and which were reaffirmed in Stuart and its progeny.

Even when the qualified-immunity inquiry is framed in this manner so as to exclude consideration of subjective motives or any additional, stricter requirements that may have existed in some form before Stuart was decided, one cannot avoid the conclusion that the facts of the present case differ significantly from those at issue in Stuart and Najar.  Here Defendants Kenny and McDonald simply battered their way through the front door without the type of efforts that the Najar officers made to confirm or dispel their suspicions from outside the residence.  Based on what little information the Defendants did possess before entering Plaintiff's residence, they knew that they had *not* been dispatched in response to an unexplained "911 disconnect" originating from Plaintiff's residence, and they had *not* observed a fight break out among the occupants before they began their forced entry.  Instead, Defendants were dispatched to handle a noise complaint and, upon knocking on the door, had a brief conversation with Plaintiff in which he indicated that he understood and

agreed to keep the noise down.  Against this backdrop, the fact that one occupant appeared

be less than 21 years of age and another occupant walked into a back room while carrying

a metal tray does not amount to an exigent circumstance.

I have previously cited authority for the proposition that generalized concerns about

a *potential* threat to a child's welfare do not constitute an "inherent exigency."  Cortez, 478

F.3d at 1124; accord Roska, 328 F.3d at 1248-50.  The Tenth Circuit also has rejected the

contention that a person's "rapid retreat" from his front door into his residence "posed a

significant and immediate risk to the officers' safety" that would qualify as an exigent

circumstance when "[t]here was no evidence introduced that indicated the officers believed

[the suspect] had a reputation for violence" or "displayed a threatening or aggressive manner

when he initially contacted the officers."  United States v. Davis, 290 F.3d 1239, 1242-43

(10th Cir. 2002).  Rather, officer-safety concerns have been recognized as "exigent

circumstances" justifying a warrantless entry into a residence when there was some report

of violent or threatening behavior by an occupant above and beyond the mere act of refusing

entry to law enforcement officers or retreating from them.  See, e.g., Walker, 474 F.3d at

1253 (finding exigent circumstances when an officer responded to a call that two men were

threatening to kill each other, and upon announcing his presence and asking if anyone was

present in the residence, the defendant responded:  "Yeah, and I got a goddamn gun");

United States v. Thomas, 372 F.3d 1173, 1177-78 (10th  Cir. 2004) (finding exigent

circumstances when an officer had just broken up a heated argument in which a firearm had

been brandished, one of the participants in that argument had stashed a firearm in the

residence before exiting, and the officer did not know who remained in the residence);
United States v. Gambino-Zavala, No. 07-2231, 2008 WL 3892073, ___ F.3d ___ (10th Cir.
Aug. 25, 2008) (finding exigent circumstances where officers were responding to multiple
reports of gunshots being fired and spoke to a bystander who "pinpointed" the shots to a
particular apartment).

In this case, the Defendants were responding to a report of a noise complaint, not a
report of child abuse or a violent confrontation. They may have heard noises associated with
yelling, shouting, laughing, or music as they approached the residence, but there is no
evidence to show that the Defendants heard gunshots, saw a fight break out, or heard the
occupants make the kind of threatening statements at issue in Walker or Thomas. The
evidence of record also contains nothing to suggest that any of the occupants of the residence
have a violent criminal history or that such history was known to the Defendants before their
arrival.

Under these circumstances, the mere act of refusing entry to, or retreating from, a
police officer who solicits a "knock and talk" encounter with one or more occupants of a
residence does not raise officer-safety concerns to the level of exigency required to overcome
the Fourth Amendment's presumption against entering or searching a residence without a
warrant. To equate a citizen's assertion of his or her constitutional right to be free of such
warrantless searches with the level of resistance required to show exigent circumstances
would produce an absurd result, for the mere assertion of the right would automatically
create the circumstances under which it is waived or forfeited.

-31-

For all of the above reasons, one cannot avoid the conclusion that Defendants Kenny and McDonald failed to satisfy the most elementary legal requirement for establishing a safety-related exigent circumstance, *i.e.*, "that the officers had an objectively reasonable basis to believe that there was an immediate need to enter to protect the safety of themselves or others." Reeves, 524 F.3d at 1169 (quoting Walker, 474 F.3d at 1253).  Coupled with their failure to show exigent circumstances arising from the need to preserve evidence or pursue a suspect, their lack of compliance with the most elementary requirement for a safety-related exigency leaves the Court with no choice but to grant Plaintiff's motion for partial summary judgment on his unlawful entry and search claim against Defendants Kenny and McDonald.

In the alternative, the Court also concludes that summary judgment in Plaintiff's favor on this issue is appropriate if one considers the second requirement for a safety-related exigency articulated in Stuart and its progeny, *i.e.*, whether "'the conduct of the entry was reasonable.'" Reeves, 524 F.3d at 1169 (quoting Walker, 474 F.3d at 1253).  To satisfy this requirement, the Defendants must show that they "confined the search to only those places inside the home where an emergency would reasonably be associated."  Najar, 451 F.3d at 720.

The Court also considers the extent to which the manner of entry chosen by the Defendants had the effect of creating the exigent circumstances on which they rely to justify the warrantless search that followed.  "The police are not free to create exigencies to justify warrantless intrusions." United States v. Flowers, 336 F.3d 1222, 1230 (10th Cir. 2003).  Thus, most courts have held that exigent circumstances do not provide an exception to the

Fourth Amendment's warrant requirement if the Government deliberately creates them in order to manufacture a reason for conducting the search.  See United States v. Coles, 437 F.3d 361, 366 (3rd Cir. 2006) (collecting cases).

Here the Defendants began their investigation by means of a "knock and talk" encounter outside the doorway of Plaintiff's residence.  This approach has been recognized as a legitimate investigative tactic, because officers generally may "go to a person's home to interview him." United States v. Daoust, 916 F.2d 757, 758 (1st Cir. 1990). "It is not improper for a police officer to call at a particular house and seek admission for the purpose of investigating a complaint or conducting other official business." 1 Wayne R. LaFave, Search and Seizure:  A Treatise on the Fourth Amendment §2.3(b), at 475 (3d ed. 1996).

But the only safety-related concerns that the Defendants have identified as arising during the limited scope and duration of their knock-and-talk encounter were that Mr. Prinkey was seen retreating from the living room to a back room, and that a person who appeared to be under 21 years of age was seen in the presence of the beer bottles on the coffee table.  For the reasons previously articulated, these observations do not amount to exigent circumstances.

Rather, the need for emergency assistance did not arise until after the forced entry by Defendants Kenny and McDonald had the effect of breaking a glass window, cutting Plaintiff's face, and dousing him and other occupants of the residence with pepper spray. At that point, it is reasonable to infer that there was a need to render emergency assistance to

Plaintiff and any other occupants who had been injured or incapacitated by the broken glass or the pepper spray.

But those injuries were an exigency of the Defendants' own creation.  Thus, in this situation, Defendants cannot rely on the circular reasoning that they needed to forcibly enter Plaintiff's residence in order to address an emergency that was created by their forcible entry. See United States v. Cantu, 230 F.3d 148, 153 & n.1 (5th Cir. 2000).

It is also important to note that, according to the Defendants' deposition testimony, their first order of business upon entering Plaintiff's residence was to secure all the occupants, take them outside for interrogation, and summon medical assistance for Plaintiff. Upon doing so, however, the evidence of record does not show that any of the occupants were armed or dangerously intoxicated.  Rather, all the reported injuries appear to have arisen from the forced entry during which one or more Defendants broke the glass and dispensed pepper spray into the residence.  After securing the occupants and attending to their injuries arising from the broken glass and pepper spray, there was no safety-related exigency which prompted Defendants to return to the residence to search for marijuana or other evidence of criminal activity.  Even assuming they had probable cause to further investigate suspected criminal activity inside the residence after removing the occupants, the proper procedure would have been to wait outside while applying for a search warrant as in McArthur, 531 U.S. at 332.  Any consent to return to the residence that Defendants may have obtained from Plaintiff or other occupants who were detained for interrogation outside the residence is tainted by the prior illegality of making a forced entry without a warrant or

-34-

exigent circumstances.  See Reeves, 524 U.S. at 1170-71 (citing Brown v. Illinois, 422 U.S. 590, 603-04 (1975)).  Thus, the manner of entry chosen by Defendants Kenny and McDonald was not reasonable, and any exigency arising from the manner in which they entered the residence was of their own creation.  It follows that Plaintiff is entitled to partial summary judgment as to the liability of Defendants Kenny and McDonald for unlawfully entering and searching Plaintiff's residence.

### D.    Further Briefing on Plaintiff's Remaining Claims

While the liability of Defendants Kenny and McDonald for unlawfully entering and searching Plaintiff's residence is the only issue for which any of the parties have filed a timely dispositive motion, the Court's ruling on that issue may have implications for other claims or Defendants which need to be addressed in the course of preparing this case for trial. Insofar as the requirements for establishing exigent circumstances to conduct a warrantless *arrest* inside a person's home parallel the requirements for establishing exigent circumstances for a warrantless *search*, the conclusion that Defendants Kenny and McDonald failed to satisfy these requirements with respect to their entry and search of Plaintiff's residence could imply that their warrantless arrest of Plaintiff inside his residence also did not comply with the Fourth Amendment.  See, e.g., Cortez, 478 F.3d at 1123-24 (concluding that exigent circumstances were lacking with respect to both a warrantless entry into a residence and a warrantless seizure within the residence).

The same is not true for Plaintiff's excessive-force claims, as the Tenth Circuit recently rejected the idea "that a plaintiff's right to recover on an excessive force claim is

dependent on the outcome of an unlawful seizure claim." Id. at 1126-27.  Instead, the rules

to be applied in cases involving claims of both unlawful arrest and excessive force arising

from a single incident are as follows:

> If the plaintiff can prove that the officers lacked probable cause [or, in this
> case, exigent circumstances], he is entitled to damages for the unlawful arrest,
> which includes damages resulting from any force reasonably employed in
> effecting the arrest.  If the plaintiff can prove that the officers used greater
> force than would have been reasonably necessary to effect a lawful arrest, he
> is entitled to damages resulting from that excessive force.  These two inquiries
> are separate and independent, though the evidence may overlap.

Id. at 1127.

While the Court appreciates the need to distinguish between unlawful-arrest claims

and excessive-force claims in this manner for purposes of establishing *liability*, as a practical

matter this distinction may not make a difference with respect to the jury's task of

determining *damages* in the context presented here.  See id. at 1133-34 (opinion of Hartz, J.,

concurring in part and dissenting in part).  The Court typically gives a stock jury instruction

to the effect that the jury cannot award damages twice for the same injury, and if the Court

were to determine as a matter of law that the arrest was unlawful, then under Cortez Plaintiff

would be entitled to the same amount of damages resulting from any use of force employed

in effecting the arrest, regardless of whether that use of force was reasonable or excessive.

The jury could be asked to apportion the damages into two components, one for injuries

resulting from the reasonable use of force and another for injuries resulting from the

excessive use of force; but the total amount of damages awarded would be the same, for even

if the jury determined that *all* the force used in effecting the arrest was reasonable, Plaintiff

would still be entitled to damages resulting from the force reasonably employed in effecting an otherwise unlawful arrest.

Combining the application of the rules articulated in Cortez for each claim with the results of the Court's summary-judgment and directed-verdict rulings at trial, and then applying them to each Defendant in this case, could prove to be a complex and confusing task for both the Court and the jury.  See id.  To avoid such confusion and reduce the level of complexity involved, the Court will order further briefing to clarify these issues to the greatest extent possible in advance of trial.

First, the Court directs the parties to submit simultaneous briefs by no later than September 30, 2008, addressing whether, in light of the evidence submitted in the briefing on Plaintiff's motion and the analysis provided above, Plaintiff is also entitled to partial summary judgment as to the liability of Defendants Kenny and McDonald for his claim that they unlawfully arrested him inside his residence without a warrant or exigent circumstances as alleged in Count III of Plaintiff's *Complaint*.  Such briefs shall be no longer than 15 pages in length.

Before the pretrial conference scheduled for October 7, 2008, the parties' counsel shall meet and confer as to which of Plaintiff's claims remain viable against which Defendants.  To the extent that the parties are able to come to an agreement that one or more claims are no longer viable against a particular Defendant, they shall so advise the Court at the pretrial conference and in their proposed pretrial order.

At the pretrial conference, the Court also will provide further guidance as to trial preparation matters and set a deadline for the parties to file trial briefs in this case. Such trial briefs shall identify the status of each of Plaintiff's claims against each Defendant, and for each claim and each Defendant, the parties' trial briefs shall summarize the anticipated evidence to be introduced at trial, address any contested issues relating to the admissibility of such evidence, explain how the jury should be instructed, and cite the applicable law.

III.   **CONCLUSION**

For the reasons set forth above, the Court determines that Plaintiff is entitled to partial summary judgment as a matter of law on his claim that Defendants Kenny and McDonald violated his clearly established Fourth Amendment rights by entering and searching his residence without a warrant or exigent circumstances. The Court further determines that additional briefing is necessary to assess the impact of this ruling on Plaintiff's other claims and to ensure adequate trial preparation.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion for Partial Summary Judgment Against Defendants Kenny and McDonald* [Doc. 32] is **GRANTED**, and the Court determines as matter of law that Defendants Kenny and McDonald are liable for the unlawful entry and search claim asserted in Count II of Plaintiff's *Complaint*.

**IT IS FURTHER ORDERED** that:

1.      The parties shall submit briefs by no later than September 30, 2008, addressing whether, in light of the evidence submitted with the briefing on Plaintiff's motion and the analysis provided above, Plaintiff is also entitled to summary judgment as to the liability of

Defendants Kenny and McDonald for his claim that they unlawfully arrested him inside his residence without a warrant or exigent circumstances as alleged in Count III of the *Complaint*.  (No replies will be allowed);

2.     Before the pretrial conference scheduled for October 7, 2008, the parties' counsel shall meet and confer as to which of Plaintiff's claims remain viable against which Defendants, and to the extent that the parties are able to come to an agreement that one or more claims are no longer viable against a particular Defendant, they shall so advise the Court at the pretrial conference and in their proposed pretrial order; and

3.     Further violation of Court rules and scheduling orders may result in the imposition of sanctions, including but not limited to restrictions on the right to present evidence, judgment as a matter of law on liability issues, and the award of reasonable attorney fees and costs.

**SO ORDERED** this 17th day of September, 2008, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge